**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| ASR 2401 FOUNTAINVIEW, LP | § § | Case No. 14-35322 |
| Debtor | § § | (Chapter 11) |
| _____ | § § | _____ |
| ASR 2401 FOUNTAINVIEW, LLC | § § | Case No. 14-35323 |
| Debtor | § § § | (Chapter 11) |
| | § § | Jointly Administered |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING
ADEQUATE PROTECTION AND (C) SCHEDULING A FINAL HEARING
PURSUANT TO 11 U.S.C. §§ 361 AND 363**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN RQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE REPSONSE.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

ASR 2401 Fountainview, LP ("Debtor"), debtor in the above-captioned bankruptcy case, hereby files its Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing ("Motion"), and in support thereof states as follows:

## I.
## INTRODUCTION AND EMERGENCY RELIEF SOUGHT

1.  The Debtor, through this Motion, requests that this Court enter (a) an interim order ("Interim Order") (i) authorizing the Debtor's use of cash collateral (as that term is defined in 11 U.S.C. § 363(a))[1] in connection with operating its business pursuant to a proposed budget that primarily assures the continued minimal operation of the Debtor's business, (ii) granting and affirming adequate protection of the secured creditor consistent with its rights, and (iii) scheduling a hearing to consider the Debtor's final and permanent use of cash collateral ("Final Hearing"); and (b) a final order ("Final Order") authorizing the Debtor to use cash collateral on a final basis on substantially the same terms as the Interim Order. The statutory predicate for the relief requested herein is Bankruptcy Code sections 361 and 363. This Motion is procedurally governed by Federal Rule of Bankruptcy Procedure ("FRBP") 4001.

2.  The Debtor requests the Court set an emergency hearing on this Motion in order to consider the Debtor's request for entry of an Interim Order as provided under FRABP 4001(b)(2). The Debtor has obligations that must be paid during the week of November 3rd, 2014 and the Debtor therefore requests that the Court schedule a hearing regarding the entry of an Interim Order sometime on October 31, 2014, or as soon thereafter as the Court is available. The Debtor anticipates a hearing on entry of an Interim Order will take less than an hour.

---

[1] 11 U.S.C. is referred to hereafter as the "Bankruptcy Code."

2

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

4. On September 30, 2014, the Debtor filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Code"), initiating Case No. 14-35322. Also on September 30, 2014, ASR 2401 Fountainview, LLC ("LLC Debtor") filed a voluntary petition under chapter 11 of Title 11 of Code, initiating Case No. 14-35323. The cases are being jointly administered under the latter case number.

5. The Debtor owns and operates an office building located at 2401 Fountainview, Houston, Texas 77057. The LLC Debtor has no operations other than acting as the general partner of the Debtor.

6. On October 2, 2014, this Court entered an Order requiring the Debtors' Bankruptcy Cases to be jointly administered under Case No. 14-35323 (Docket No. 4).

7. Prior to, on, and after the Petition Date, the Debtor has received and collected, and continues to receive and collect, issues, proceeds, profits, and accounts receivable (collectively, the "Revenues") generated by and arising from the operation of the Real Property.

8. JPMCC 2006-LDP7 Office 2401, LLC (the "Noteholder") is a secured creditor with a pre-petition security interest in the Debtor's Real Property, related personal property, inventory, and proceeds therefrom, as well as the Revenues generated from the operation and leasing of the Real Property (collectively, the "Property"). Pursuant to 11 U.S.C.§ 552(b), the

Noteholder holds a security interest in post-petition Revenues and Property and related proceeds and profits therefrom collected by the Debtor, which is cash collateral, whether now in the Debtor's (or persons in privity with the Debtor) possession, custody, or control, or in which the Debtor will obtain an interest during the pendency of these Bankruptcy Cases, and all other "cash collateral" within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral"), and has stipulated to the limited use of the Cash Collateral.

9. The Noteholder holds a valid, perfected, first-priority secured claim against the Debtor in connection with certain financial accommodations extended to the Debtor as set forth in the relevant Loan Documents, in which the Noteholder holds the beneficial interest (the "Pre-Petition Claim"). The Pre-Petition Claim is secured by, among other things, all of the Real Property, and substantially all of the Debtor's personal property and all proceeds therefrom, including, but not limited to, the Revenues, cash, and Cash Collateral, and the Property, as set forth specifically in the Loan Documents (the "Collateral"). The Noteholder is the owner and holder of the Loan Documents more specifically described as follows, without limitation:

    i.    that certain Loan Agreement between the Debtor, as Borrower, and GMAC Commercial Mortgage Bank ("GMAC"), as Lender, dated as of February 2, 2006 (the "Loan Agreement");

    ii.    that certain Promissory Note in the principal amount of $12,750,000.00 dated as of February 2, 2006, executed by the Debtor in favor of GMAC (the "Note");

    iii.    that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of February 2, 2006, executed by the Debtor, and recorded in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080879 (the "Deed of Trust");

    iv.    that certain Assignment of Leases and Rents, dated as of February 2, 2006, executed by the Debtor, and recorded in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080880;

    v.    that certain Lockbox-Deposit Account Control Agreement, dated as of February 2, 2006, between the Debtor, as Borrower, GMAC, as Lender, and Amegy Bank National Association ("Amegy Bank") (the "First Lockbox Agreement");

    vi.    that certain UCC-1 Financing Statement in favor of GMAC filed in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080881 (the "TX Financing Statement");

    vii.    that certain UCC-1 Financing Statement in favor of GMAC filed in the Office of the Secretary of State of Delaware on March 15, 2006 under File No. 6088709-1 (the "DE Financing Statement");

    viii.    that certain Assignment of Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of July 14, 2006, executed by Capmark Bank ("Capmark"), as successor-in-interest to GMAC, in favor of Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7 (the "Trust"), and recorded in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063200 (the "First DOT Assignment");

    ix.    that certain Assignment of Assignment of Leases and Rents dated as of July 14, 2006, executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust, and recorded in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063201 (the "First ALR Assignment");

    x.    that certain Omnibus Assignment, dated as of July 14, 2006, executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust (the "First Omnibus Assignment");

    xi.    that certain Allonge executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust (the "First Allonge");

    xii.    that certain UCC-3 Assignment in favor of Wells Fargo, as Trustee for the Trust, filed in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063234, and in the Office of the Secretary of State of Delaware on September 19, 2006 under File No. 6345807-2 (the "First UCC-3 Assignment");

    xiii.    that certain UCC-3 Assignment in favor of Wells Fargo, as Trustee for the Trust, filed in the Official Public Records of Harris County,

Texas on December 4, 2006 under File No. 20060235723 (the "Second UCC-3 Assignment");

xiv. that certain Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Fixture Filing and Assignment of Assignment of Leases and Rents dated as of June 30, 2009, executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank National Association ("U.S. Bank"), as Trustee for the Trust, and recorded in the Official Public Records of Harris County, Texas on December 15, 2009 under File No. 20090564716 (the "Second DOT Assignment");

xv. that certain Omnibus Assignment dated as of June 30, 2009, executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust (the "Second Omnibus Assignment");

xvi. that certain Allonge executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust (the "Second Allonge");

xvii. that certain UCC-3 Assignment in favor of U.S. Bank, as Trustee for the Trust filed in the Official Public Records of Harris County, Texas on December 15, 2009 under File No. 20090564717, and in the Office of the Secretary of State of Delaware on November 24, 2009 under File No. 2009-3779474 (the "Third UCC-3 Assignment");

xviii. that certain Deposit Account Control Agreement dated as of November 27, 2013 between U.S. Bank, as Trustee for the Trust, as Secured Party, Key Bank, National Association ("Key Bank"), and the Debtor (the "Second Lockbox Agreement");

xix. that certain Assignment of Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing and Other Loan Documents dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder, and recorded in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461993 (the "Third DOT Assignment");

xx. that certain Assignment of Assignment of Leases and Rents dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder, and recorded in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461994 (the "Second ALR Assignment");

xxi. that certain Omnibus Assignment of Loan Documents, dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder (the "Third Omnibus Assignment");

xxii. that certain Allonge executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder (the "Third Allonge"); and,

xxiii. that certain UCC-3 Assignment in favor of the Noteholder and filed in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461995 (the "Fourth UCC-3 Assignment").

## IV.
## ARGUMENTS AND AUTHORITIES

**A.  The Debtor's Immediate Need for Cash Collateral**

10.  Section 363 of the Bankruptcy Code provides that "the [debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (l) of this subsection unless … the court' after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2)(B).  Pursuant to sections 363(c) and (e), a court may authorize the use of cash collateral only to the extent that the party asserting an interest in such collateral is adequately protected or otherwise consents.  *Id.*  § 363(c) and (e).

11.  The Debtor has an immediate need to use the Cash Collateral to continue the operation of its business and preserve its value as a going concern. Without such funds, the Debtor will not be able to pay costs and expenses, including inventory purchases, wages, salaries, professional fees and administrative operating expenses that arise in the administration of its chapter 11 case and in the ordinary course of the Debtor's business.

12.  The Debtor requests interim authorization to use Cash Collateral in accordance with the Interim Budget until a final order granting further use of Cash Collateral can be entered. The Debtor is without sufficient funds, other than Cash Collateral, to operate for more than 15 days until a final hearing on this Motion can be held.  The Debtor's inability to pay timely the

7

costs and expenses identified in the Interim Budget will result in immediate and irreparable harm to its business and assets. Because the Debtor's request for interim authorization seeks the use of only the amount of Cash Collateral necessary to avoid immediate and irreparable harm to its business and the value of its assets pending a final hearing, its request complies with Bankruptcy Rule 4001(b)(2).

13.     The Interim Budget itemizes the sources and uses of cash and provides a projection of cash receipts and expenditures. The Interim Budget includes a list of business expenses that are reasonable and necessary and that must be paid to continue the Debtor's business operations pending a final hearing. The Debtor proposes that its compliance with the Interim Budget be tested monthly and that it will comply with the Interim Budget such that actual postpetition disbursements will not exceed the aggregate amount of all budgeted disbursements by more than 10%, exclusive of line items for professional fees and expenses, unless as otherwise ordered by the Court or agreed to in writing by the Noteholder.

**B.      Adequate Protection Pursuant to Bankruptcy Code Section 363(e)**

14.     Section 363(e) provides

[O]n request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). Providing adequate protection to the lender with an interest in cash collateral is mandatory. *See e.g.*, *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D. Tex. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the release specified, at any time, on request of the secured entity."); *In re Heatron, Inc.*, 6 B.R. 493, 494 (Bankr. W.D. Mo. 1980) ("Providing adequate protection is mandatory").

15. Section 361 of the Bankruptcy Code recognizes

> three nonexclusive forms of adequate protection that may apply to the debtor's use of property in which a secured creditor has an interest: cash payments to the extent the collateral has declined in value, extra collateral to compensate for such a decline, or other relief "as will result in the realization by [the secured party] of the indubitable equivalent of such entity's interest in such property."

*Perez v. Peake*, 373 B.R. 468, 483 (S.D. Tex. 2007) (citing 11 U.S.C. § 361). Courts consider in each case "[t]he nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection." *In re Briggs Transp. Co.*, 780 F.2d 1339, 1348 (8th Cir. 1985). The purpose of adequate protection is to ensure that a secured party's economic position is not worsened because of the use of its property by a debtor or trustee. The purpose of adequate protection is to ensure that the lender's economic position is not worsened because of the bankruptcy case. *In re Chavez,* No. 07-36007-H3-13, 2008 WL 624566, *3 (Bankr. S.D. Tex. Mar. 5, 2008); *see also In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) (en banc).

16. The Debtor proposes to adequately protect the Lender's interest in the Prepetition Collateral in numerous ways. First, the Debtor proposes to grant continuing, valid, perfected and enforceable replacement security interests in and liens upon all categories of property of the Debtor and its estate, whether now existing or hereafter acquired or arising, upon which the Lender held prepetition liens and all proceeds, rents, products, or profits thereof, including without limitation, the collateral owned by the Debtor as of the Petition Date (collectively, the "Post-petition Collateral").

17. Second, the Debtor proposes a superpriority administrative expense claim (the "Superpriority Claim") for the Lender. The Superpriority Claim will have priority in this Case under Bankruptcy Code sections 503(b) and 507(b) and otherwise over all administrative

9

expense claims and unsecured claims, whether in existence on or arising after the Petition Date against the Debtor and its estate of any kind or nature whatsoever, and will be subordinate only to the Carve-Out (as defined in the Interim Order).

18. Third, Debtor shall deliver payment to Noteholder in the amount of at least $74,973.48 beginning within 3 days of the entry of the Interim Order, and monthly on the 20th day of each calendar month thereafter as set forth in the Budget. Noteholder shall apply these payments first to pre-petition interest and then to pre-petition principal due on the outstanding pre-petition indebtedness without further order of the Court.

19. Fourth, Debtor shall deposit monthly tax escrow payments into a tax escrow account to be created as soon as this Order is approved (the "Tax Escrow DIP Account"), which account shall be styled "ASR 2401 Fountainview, LP, as Debtor-in-Possession, Tax Escrow, Case No. 14-335323-H3-11 (Jointly Administered)," in an amount equal to one-twelfth (1/12) of the amounts assessed by the Harris County taxing authorities related to *ad valorem* property taxes during the 2013 tax year, on or before the twentieth (20th) day of each calendar month during the remaining terms of the Interim Order and Final Order, with such payments beginning within 3 days of entry of the Interim Order. The Debtor shall remain current in all post-petition tax payments and reporting obligations. Funds in the Tax Escrow DIP Account shall not be utilized except upon further order from this Court or upon written consent from Noteholder.

## V.
## REQUEST FOR FINAL HEARING

20. Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests the scheduling of a final hearing to consider the

Debtor's ability to use cash collateral for a date that is no more than 30 days after the date that this Motion is filed.

## VII.
## NOTICE

21. No trustee, examiner, or statutory creditors' committee has been appointed in the Debtor's chapter 11 case. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of Texas; (ii) the Debtor's prepetition secured lenders; (iii) the Debtor's twenty (20) largest unsecured creditors; and (iv) the Internal Revenue Service. In light of the nature of the relief requested, the Debtors submit that no other or further notice be provided.

22. No previous request for the relief sought in herein has been made to this or any other Court.

WHEREFORE, the Debtor requests that the Court (i) authorize the use of cash collateral proposed in the Interim Order and Interim Budget, (ii) set a final hearing pursuant to Bankruptcy Rule 4001(b)(2) to consider the Debtor's authority to use cash collateral on a final basis, and (iii) grant the Debtor such other legal and equitable relief to which it is entitled.

Respectfully submitted on this 29th day of October, 2014

    Respectfully submitted,

    **OKIN & ADAMS LLP**

    By:  */s/ Christopher Adams*
    Christopher Adams
    Texas Bar No. 24009857
    Email:  cadams@okinadams.com
    1113 Vine St. Suite 201
    Houston, TX 77002
    Tel: (713) 228-4100
    Fax: (888) 865-2118

    **PROPOSED COUNSEL FOR**
    **ASR 2401 FOUNTAINVIEW, LP AND**
    **ASR 2401 FOUNTAINVIEW, LLC**

**CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)**

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

*/s/ Christopher Adams*

Christopher Adams

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2014, I served a copy of the foregoing via the Court's EM/ECF electronic system to all parties consenting to service through same, and to the parties on the attached service list by United States First Class Mail, postage prepaid.

*/s/ Christopher Adams*
Christopher Adams