

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
11/26/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ASR 2401 FOUNTAINVIEW, LP,** | § | **Case No.  14-35322-H3-11** |
| | § | **(Chapter 11)** |
| DEBTOR. | § | **(Jointly Administered)** |
| | § | |

| | | |
|---|---|---|
| **ASR 2401 FOUNTAINVIEW, LLC,** | § | **Case No. 14-35323-H3-11** |
| | § | **(Chapter 11)** |
| DEBTOR. | § | **(Jointly Administered)** |

**AGREED SECOND INTERIM ORDER APPROVING USE OF CASH
COLLATERAL AND GRANTING PARTIAL ADEQUATE PROTECTION
[This instrument relates to Docket No. 11]**

This matter having come before the Court on the Debtor's Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection and (C) Scheduling a Final Hearing pursuant to 11 U.S.C. §§ 361 and 363 (Docket No. 11) (the "Motion") filed by ASR 2401 Fountainview, LP (the "Debtor") in the above-captioned, jointly administered chapter 11 cases (the "Bankruptcy Cases"), seeking entry of an order pursuant to § 363 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the use of cash collateral of JPMCC 2006-LDP7 Office 2401, LLC (the "Noteholder").  Noteholder and the Debtor, having appeared by counsel, stipulate as follows:[1]

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and has constitutional authority to enter a final order in this matter.  This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      Sufficient and adequate notice of the Motion and the hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Federal Rules of

---

[1] The parties' stipulations shall not be construed as findings of fact or conclusions of law by this Court for purposes of this Interim Order.

Bankruptcy Procedure 2002, 4001(b), and 9006, and as required by §§ 102, 361, 362, and 363 of the Bankruptcy Code.

       C.       Good and sufficient cause has been shown for the entry of this Interim Order.

       D.       On September 30, 2014 (the "Petition Date"), the Debtor, along with ASR 2401 Fountainview, LLC (the "LLC Debtor," and together with the Debtor, collectively, the "Debtors") filed petitions for reorganization under chapter 11 of the Bankruptcy Code. The Debtors continue in possession and management of their businesses pursuant to 11 U.S.C. §§ 1107 and 1108. To date, no trustee or creditors' committee has been appointed in these Bankruptcy Cases.

       E.       The Debtor owns and operates a commercial office building located at 2401 Fountainview, Houston, Texas 77057 (the "Real Property"). The LLC Debtor is the general partner of the Debtor and has no operations other than acting as the general partner of the Debtor.

       F.       On October 2, 2014, this Court entered an Order requiring the Debtors' Bankruptcy Cases to be jointly administered under Case No. 14-35323 (Docket No. 4).

       G.       The Real Property is "single asset real estate" (as defined under § 101(51B) of the Bankruptcy Code), the Debtors are "single asset real estate" entities, and the Debtors are subject to the requirements set forth in § 362(d)(3) of the Bankruptcy Code.

       H.       Prior to, on, and after the Petition Date, the Debtor has received and collected, and continues to receive and collect, issues, proceeds, profits, and accounts receivable (collectively, the "Revenues") generated by and arising from the operation of the Real Property.

       I.       Noteholder is a secured creditor with a pre-petition security interest in the Debtor's Real Property, related personal property, inventory, and proceeds therefrom, as well as the Revenues generated from the operation and leasing of the Real Property (collectively, the "Property"). Pursuant to 11 U.S.C.§ 552(b), the Noteholder holds a security interest in post-

petition Revenues and Property and related proceeds and profits therefrom collected by the Debtor, which is cash collateral, whether now in the Debtor's (or persons in privity with the Debtor) possession, custody, or control, or in which the Debtor will obtain an interest during the pendency of these Bankruptcy Cases, and all other "cash collateral" within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral"), and has stipulated to the limited use of the Cash Collateral as provided in this Interim Order.[2]

J.      The Noteholder holds a valid, perfected, first-priority secured claim against the Debtor in connection with certain financial accommodations extended to the Debtor as set forth in the relevant Loan Documents, in which the Noteholder holds the beneficial interest (the "Pre-Petition Claim"). The Pre-Petition Claim is secured by, among other things, all of the Real Property, and substantially all of the Debtor's personal property and all proceeds therefrom, including, but not limited to, the Revenues, cash, and Cash Collateral, and the Property, as set forth specifically in the Loan Documents (the "Collateral"). The Noteholder is the owner and holder of the Loan Documents more specifically described as follows, without limitation:

(i)      that certain Loan Agreement [Fixed Rate] between the Debtor, as Borrower, and GMAC Commercial Mortgage Bank ("GMAC"), as Lender, dated as of February 2, 2006 (the "Loan Agreement");

(ii)      that certain Promissory Note in the principal amount of $12,750,000.00 dated as of February 2, 2006, executed by the Debtor in favor of GMAC (the "Note");

(iii)      that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of February 2, 2006, executed by the Debtor, for the benefit of GMAC, and recorded in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080879 (the "Deed of Trust");

(iv)      that certain Assignment of Leases and Rents, dated as of February 2, 2006, executed by the Debtor, in favor of GMAC, and recorded

---

[2] For purposes of this Interim Order, "proceeds" of any of the Collateral shall mean "Proceeds," as defined in the Uniform Commercial Code, of such Collateral.

in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080880 (the "Assignment of Leases & Rents");

(v)      that certain Lockbox-Deposit Account Control Agreement, dated as of February 2, 2006, between the Debtor, as Borrower, GMAC, as Lender, and Amegy Bank National Association ("Amegy Bank") (the "First Lockbox Agreement");

(vi)     that certain UCC-1 Financing Statement in favor of GMAC filed in the Official Public Records of Harris County, Texas on February 8, 2006 under File No. Z080881 (the "TX Financing Statement");

(vii)     that certain UCC-1 Financing Statement in favor of GMAC filed in the Office of the Secretary of State of Delaware on March 15, 2006 under File No. 6088709-1 (the "DE Financing Statement");

(viii)    that certain Assignment of Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of July 14, 2006, executed by Capmark Bank ("Capmark"), as successor-in-interest to GMAC, in favor of Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7 (the "Trust"), and recorded in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063200 (the "First DOT Assignment");

(ix)     that certain Assignment of Assignment of Leases and Rents dated as of July 14, 2006, executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust, and recorded in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063201 (the "First ALR Assignment");

(x)      that certain Omnibus Assignment, dated as of July 14, 2006, executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust (the "First Omnibus Assignment");

(xi)     that certain Allonge executed by Capmark, as successor-in-interest to GMAC, in favor of Wells Fargo, as Trustee for the Trust (the "First Allonge");

(xii)     that certain UCC-3 Assignment in favor of Wells Fargo, as Trustee for the Trust, filed in the Official Public Records of Harris County, Texas on September 21, 2006 under File No. 20060063234, and in

the Office of the Secretary of State of Delaware on September 19, 2006 under File No. 6345807-2 (the "First UCC-3 Assignment");

(xiii)   that certain UCC-3 Assignment in favor of Wells Fargo, as Trustee for the Trust, filed in the Official Public Records of Harris County, Texas on December 4, 2006 under File No. 20060235723 (the "Second UCC-3 Assignment");

(xiv)   that certain Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Fixture Filing and Assignment of Assignment of Leases and Rents dated as of June 30, 2009, executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank National Association ("U.S. Bank"), as Trustee for the Trust, and recorded in the Official Public Records of Harris County, Texas on December 15, 2009 under File No. 20090564716 (the "Second DOT Assignment");

(xv)   that certain Omnibus Assignment dated as of June 30, 2009, executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust (the "Second Omnibus Assignment");

(xvi)   that certain Allonge executed by Wells Fargo, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust (the "Second Allonge");

(xvii)   that certain UCC-3 Assignment in favor of U.S. Bank, as Trustee for the Trust filed in the Official Public Records of Harris County, Texas on December 15, 2009 under File No. 20090564717, and in the Office of the Secretary of State of Delaware on November 24, 2009 under File No. 2009-3779474 (the "Third UCC-3 Assignment");

(xviii)   that certain Deposit Account Control Agreement dated as of November 27, 2013 between U.S. Bank, as Trustee for the Trust, as Secured Party, Key Bank, National Association ("Key Bank"), and the Debtor (the "Second Lockbox Agreement");

(xix)   that certain Assignment of Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing and Other Loan Documents dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder, and recorded in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461993 (the "Third DOT Assignment");

(xx)   that certain Assignment of Assignment of Leases and Rents dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the

Trust, in favor of the Noteholder, and recorded in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461994 (the "Second ALR Assignment");

(xxi)  that certain Omnibus Assignment of Loan Documents, dated as of August 27, 2013, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder (the "Third Omnibus Assignment");

(xxii)  that certain Allonge executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder (the "Third Allonge");

(xxiii)  that certain UCC-3 Assignment in favor of the Noteholder and filed in the Official Public Records of Harris County, Texas on September 9, 2013 under File No. 20130461995 (the "Fourth UCC-3 Assignment"); and,

(xxiv)  that certain Forbearance Letter Agreement between Noteholder and the LP Debtor dated as of May 1, 2014 (the "Forbearance Agreement").

K.      Counsel for the Debtor has certified that notice of the Motion was given to: (a) the United States Trustee for the Southern District of Texas, Houston Division; (b) the Noteholder and its counsel; and, (c) the parties listed on the Debtor's List of 20 largest unsecured creditors.

L.      Debtor believes that it is in the best interests of the estate and its creditors and has requested that Debtor be permitted to utilize the Revenues subject to the terms and conditions set forth herein.

M.      The entry of this Interim Order to allow Debtor to utilize the Revenues only in the manner provided herein, and to provide the Noteholder with partial adequate protection as provided herein, is in the best interest of Debtor, the estate, and its creditors.

Based upon the parties' stipulations that due notice has been given, and after consideration of the Motion, the evidence, the arguments of counsel, and the agreement of the parties, the Court finds and concludes that the following relief (the "Interim Order") is appropriate upon the terms and conditions set forth below.  It is therefore **ORDERED** that:

1.      The Motion is **GRANTED** as set forth in this Interim Order.

2.     The Debtor is authorized to use Cash Collateral solely to pay the expenses described in the column marked "Nov" set forth in the Budget attached hereto as **Exhibit A** for the period (the "Interim Period") of **November 19, 2014 through and including November 30, 2014** (the "Termination Date"), strictly and solely in accordance with the Budget and subject to the terms and conditions provided in this Interim Order.   The Debtor shall solely make expenditures only for the purposes and up to the amounts set forth in the Budget, unless the Noteholder consents in writing within the Interim Period or the Court approves such additional expense(s) after notice and hearing.   The Debtor shall not, without prior written approval from the Noteholder, make expenditures for any line item for an amount that exceeds 110% of the budgeted amount for any particular line item.   In the event additional expenditures in a category are required, the Debtor shall notify the Noteholder in writing prior to such expenditure to obtain authority; provided, in the event that the Noteholder fails to decline such request by written, including e-mail, response within **three (3) business days**, such expenditure shall be deemed to be authorized.

3.     Except upon the occurrence of a Termination Event (defined hereafter), the Debtor's authority to use Cash Collateral under the terms of this Interim Order shall continue until the Termination Date, at which time the Debtor's authority to use Cash Collateral will expire unless the authority is extended by agreement in writing with the Noteholder or by further order of the Court.   The Noteholder and the Debtor may agree to other terms of use of Cash Collateral in writing filed with the Court.

### Segregation, Accounting, and Reporting/Inspection

4.     Prior to the Petition Date, the Noteholder and the Debtor operated under the Second Lockbox Agreement pursuant to which all Revenues generated by the Debtor were deposited into the Deposit Account (as defined in the Second Lockbox Agreement) bearing

account No. ******2039 at Key Bank (the "Lockbox Account") and thereafter swept into account No. ******2047 at Key Bank (the "Cash Management Account").  Post-petition cash management of the Cash Collateral shall continue in accordance with the Second Lockbox Agreement and this Interim Order, provided that the Lockbox Account shall be restyled in the name of the Noteholder and all deposits and collections of Cash Collateral shall continue to be directed to such account; provided further, that the Noteholder, upon written instruction from the Debtor, shall make periodic advances to, or on behalf of the Debtor, from the Cash Management Account to the DIP Account (defined herein) maintained by the Debtor in order for the Debtor to pay items set forth in the Budget.  Written requests for advances for items payable under the Budget shall be made to the Noteholder, with a copy to Noteholder's counsel, directed to: John Yee, LNR Partners, LLC, at jyee@lnrproperty.com, and Joseph G. Epstein at jepstein@winstead.com, and Sean B. Davis at sbdavis@winstead.com.

5.       Funds received and held in the Lockbox Account and the Cash Management Account by the Noteholder pursuant to this Order shall not be utilized, disbursed, or applied except in accordance with the Budget, or upon further order from this Court, and upon written consent from the Noteholder and notice to the Debtor.  The automatic stay under 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit Noteholder to receive and remit the funds in the Lockbox Account and the Cash Management Account as provided in this Order. Additionally, the Noteholder shall provide to the U.S. Trustee's counsel via e-mail by **5:00 p.m. Central Time** on the twentieth (**20th**) calendar day of each month, beginning on **November 20, 2014**, an accounting of the Lockbox Account and the Cash Management Account for the previous month, which accounting may be satisfied by the provision of the bank statements for the applicable period for each account.  Delivery of e-mail notification to the U.S. Trustee's counsel shall be made to Ellen M. Hickman at ellen.hickman@usdoj.gov.

6.      Other than the Lockbox Account, the Debtor shall close any and all current and/or pre-petition deposit accounts and deposit all Revenues, Cash Collateral, and all other income it now holds or in the future may hold or receive, including, but not limited to, all: (a) cash; (b) cash equivalents, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents or profits of the Collateral and all other "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code into the Lockbox Account.  Further, the Debtor shall establish a debtor-in-possession operating account No. ******9710 at Wells Fargo Bank, N.A. (the "DIP Account") and shall pay all expenses only as authorized herein, using the DIP Account.

7.      The DIP Account shall be styled in the name "ASR 2401 Fountainview, LP as Debtor-in-Possession, Case No. 14-35323-H3-11 (Jointly Administered)."  During the pendency of these Bankruptcy Cases, Debtor shall deposit all Cash Collateral it receives into the Lockbox Account and only pay expenses from funds in the DIP Account.  Debtor shall also segregate and provide to Noteholder's counsel via e-mail a monthly accounting of all deposits to, and disbursements from, the DIP Account no later than **5:00 p.m. (Central Time)** on the twentieth (**20th**) day of each calendar month, beginning with October 2014.[3]

8.      The Debtor shall also deliver the following reports to Noteholder and its counsel, via e-mail by **5:00 p.m. Central Time** on the twentieth (**20th**) day of each calendar month, beginning with the month of October 2014:

(a)      Complete copies of the most recent bank statements from the DIP Account;

(b)      Copies of the most current online bank statements from the DIP Account;

---

[3] Such reporting should reflect sufficient information to identify the payee of each disbursement made by the Debtor if such information is not otherwise reflected in the reporting required in paragraph seven (7) of this Interim Order.

(c)     Copies of the inventory lists, sales transactions, and accounts receivable for the Debtor;

(d)     A statement of revenues and expenditures for the previous month, including the checkbook register for Debtor; and,

(e)     A cash budget report for the prior month that reconciles the projected cash income and expenses against the actual cash income and expenses for the applicable month.

9.      The Debtor shall segregate and account to the Noteholder for all Cash Collateral that the Debtor collected, possessed, or used from the Petition Date to November 18, 2014, that it has permitted to be transferred, if any, into the possession of others, that is being held by those in privity with the Debtor, or which the Debtor might hereafter obtain.  Except as otherwise permitted by this Interim Order and/or the Budget attached hereto, the Debtor shall not make any payments to or for the benefit of any insider of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code.

10.     Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtor shall, during regular business hours, allow the Noteholder and/or its attorneys or agents to review and copy: (a) all invoices, contracts, leases, and other documents and writings relating to any and all disbursements made or obligations incurred by the Debtor with respect to the operation of the Debtor; and, (b) any and all other books and records of the Debtor pertaining to its use of Cash Collateral.  Debtor shall keep its books and records current and updated, so that all business activities are posted to them within three (3) business days of such activity.

11.     Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtor shall, during regular business hours, permit representatives, agents, and/or employees of the Noteholder to visit, inspect, have reasonable access to and consult with, as the case may be: (a) the Debtor's books and records; (b) the personnel and/or agents of the Debtor who are familiar with the Debtor's books and records, or the information set forth therein; (c) the Debtor's

business, for the purposes of, without limitation, conducting inventory counts, reviews of licenses and payments to taxing or other governmental authorities, and environmental site assessments of the Real Property; and, (d) such other information as the Noteholder may reasonably request.  The Debtor and its representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, and/or employees of the Noteholder all such information as they may reasonably request during regular business hours.

12.    Upon **three (3) business days'** notice to Debtors' counsel by e-mail, the Debtor shall provide to the Noteholder such additional financial or other information concerning the acts, conduct, property, including the Collateral, assets, liabilities, operations, financial condition, transactions of Debtor, or concerning any matter which may affect the administration of the estate, as the Noteholder may from time to time reasonably request.

13.    Delivery of e-mail notification to Noteholder's counsel shall be made to Joseph G. Epstein at jepstein@winstead.com and Sean B. Davis at sbdavis@winstead.com.  Delivery of e-mail notice to the Debtors and their counsel shall be made to Christopher Adams at cadams@okinadams.com.

## Partial Adequate Protection

14.    As partial adequate protection for the interests of the Noteholder in the Real Property, Revenues, and Cash Collateral pursuant to 11 U.S.C. §§ 361, 363(c) and 363(e), and in consideration of Debtor's use thereof, Debtor shall take the following actions:

> (a)    Partial Adequate Protection Payments and Escrows: Debtor shall earmark and allocate in the Budget, but not disburse until further Order of this Court, funds for future payment to Noteholder in the amount of at least $74,973.48 per month beginning with the month of October 2014 and monthly thereafter as set forth in the Budget.  Debtor shall also earmark and allocate in the Budget, but not disburse until further Order of this Court, funds for future monthly tax escrow payments to the Noteholder, in an amount equal to one-twelfth (1/12) of the amounts assessed by the Harris County taxing authorities related to *ad valorem* property taxes

during the 2013 tax year, beginning with the month of October 2014 and monthly thereafter as set forth in the Budget. Debtor shall also earmark and allocate in the Budget, but not disburse until further Order of this Court, funds for future monthly insurance escrow payments to the Noteholder, in an amount equal to one-twelfth (1/12) of the premium related to insurance the Real Property and related personal Property for the 2014 calendar year, beginning with the month of October 2014, and monthly thereafter as set forth in the Budget.

(b)     Replacement Liens.

    (i) As additional partial adequate protection of Noteholder's interests in, *inter alia*, the Collateral, the Cash Collateral, and any diminution in value thereof during the pendency of these Bankruptcy Cases, and in consideration of Debtor's use thereof, and to the extent, if any, that the liens granted in this Paragraph are not encompassed within the liens granted pursuant to the Loan Documents, Debtor shall grant, and Noteholder shall have, valid and automatically perfected first-priority replacement and additional liens and security interests, ahead of all other liens (the "Post-Petition Liens"), in and upon any and all assets of Debtor, including, but not limited to, the Real Property, personal Property, Revenues, and all assets described as Collateral in the Loan Documents and this Interim Order, whether acquired or generated, including, but not limited to, estate tax refunds, insurance proceeds, insurance premium refunds, security deposits, utility deposits, and bonds and proceeds of same, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of Debtor against third parties for loss or damage to the aforementioned items), and all accessions thereto, substitutions and replacements thereof, and wherever located, and all assets acquired by Debtor post-petition and recoveries by the estate under any provision of Bankruptcy Code or other applicable law (except recoveries pursuant to 11 U.S.C. §§ 547, 548, and 550), leases and occupancy agreements and all amendments, modifications, extensions, or renewals of leases and occupancy agreements relating to the Real Property, which, on or after the Petition Date Debtor has entered into or enters into, and all rents, income and profits arising therefrom, and also Noteholder shall be and hereby is granted replacement security interests and liens in any real or personal property Debtor's estate acquired or acquires on or after the Petition Date in which Noteholder would have had a valid, effective and perfected lien or security interest were it not for 11 U.S.C. § 552(a) (collectively, the "Post-Petition Collateral").   The liens and security interests granted hereunder to Noteholder shall be prior to any post-petition assignment, lien, or interest in favor of any other person, subordinate only to administrative claims allowed pursuant to 11 U.S.C. § 330 and quarterly fees to the United States Trustee.  Notwithstanding the foregoing, the liens

and security interests granted hereunder shall be of the same force, effect, and priority as the Noteholder's pre-petition lien(s), if any.

(ii) As additional partial adequate protection of Noteholder's interest in its Collateral and Cash Collateral, and only to the extent applicable and permissible under the Bankruptcy Code, Noteholder shall have an allowed administrative expense claim as set forth under Section 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Bankruptcy Code Sections 507(b) and 503(b), to the extent of any diminution in the value of Noteholder's interest in the Collateral and Cash Collateral.  Noteholder is also hereby granted all of the other benefits and protections allowable under 11 U.S.C. §§ 503(b) and 507(b) of the Bankruptcy Code, subordinate only to administrative claims allowed pursuant to 11 U.S.C. § 330 and quarterly fees to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

(iii) The Post-Petition Liens are, and for all purposes shall be deemed to be, valid and enforceable, and no filing or recordation or other act shall be necessary to create or perfect such liens.  Noteholder shall not be required to file financing statements, mortgages or other documents in any jurisdiction or take any other action in order to validate or perfect the respective security interests granted to it under this Interim Order and related instruments, documents and agreements.  To the extent that 11 U.S.C. § 362, or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created in this Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of the U.S. Bankruptcy Court.  If Noteholder shall, in its sole discretion, choose to file such financing statements, mortgages or other documents or otherwise confirm perfection of such security interests, all such financing statements or similar documents shall be deemed to have been filed or recorded and perfected at the time and on the date of entry of this Interim Order.

(iv) At the reasonable request of Noteholder, Debtor shall execute and deliver to Noteholder such further documents, including, but not limited to, any tax returns or instruments used to remit tax payments, and other instruments, and will do such further acts as Noteholder may deem advisable or necessary to assure to Noteholder the granting and perfection of all of the rights and interests given or intended to be given to Noteholder.

15.     None of the post-petition liens granted to Noteholder in this Interim Order shall prime any valid *ad valorem* property tax liens and/or claims, if any.  Nothing in this Interim

Order shall impair the rights of the taxing authorities with respect to valid tax liens on Noteholder's Collateral.

16.     As further partial adequate protection, the Debtor: (a) acknowledges that in any sale of or which includes Noteholder's Collateral under § 363 of the Bankruptcy Code (whether pursuant to a plan of reorganization or otherwise) in these Chapter 11 Bankruptcy Cases, Noteholder shall have the right to credit bid pursuant to 11 U.S.C. § 363(k), if applicable; (b) acknowledges that in any sale of or which includes Noteholder's Collateral under any circumstances, Noteholder shall have the right to credit bid pursuant to 11 U.S.C. § 1123(b)(4) and/or § 1129(b)(2)(A)(ii), if applicable; and, (c) agrees not to seek an order to the contrary.

### Events of Default and/or Termination

17.     The occurrence of any of the following shall constitute an event of default under this Order: (a) any breach by the Debtor of its obligations under this Order; (b) conversion of the Debtors' Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code; (c) appointment of a trustee in the Debtors' Chapter 11 Bankruptcy Cases; (d) dismissal of the Debtors' Bankruptcy Cases; (e) the entry of any order reversing, revoking, or rescinding this Interim Order without express prior written consent of Noteholder (any of the foregoing events of default being referred to in this Interim Order individually as an "Event of Default" and collectively as "Events of Default").

18.     Upon the occurrence of any Event of Default, Noteholder shall provide Debtors' counsel written notice of such default (which may be accomplished by e-mail, facsimile transmission, hand delivery, or overnight delivery).  If Debtor has failed to fully and completely cure any such Event of Default to Noteholder's satisfaction within **three (3) business days** after receipt of notice of the Event of Default by Debtors' counsel, then without any further act, notice or action by Noteholder or any further notice, hearing, act or order of this Court, Debtor's

authority to use Cash Collateral and any and all obligations of Noteholder under this Interim Order shall terminate.  Upon such termination, Debtor shall immediately cease making any use of or disbursement of the Cash Collateral and Post-Petition Collateral from the DIP Account until further order from this Court or permission from Noteholder.  Debtor shall continue, however, to deposit receipts pertaining to the Real Property, Property, and Collateral into the Lockbox Account.

19.     In the event that Debtor has failed to fully and completely cure an Event of Default to Noteholder's satisfaction within **three (3) business days** after receipt of notice of the Event of Default by Debtor's Counsel, Noteholder shall be entitled to seek an expedited hearing for relief from the automatic stay, which request for expedited hearing the Debtor shall not oppose.

20.     Noteholder's failure to provide written notice of an Event of Default shall in no way be deemed a waiver of Noteholder's rights or remedies under this Interim Order.

21.     Unless otherwise agreed to in writing by the Debtor and Noteholder, the Debtor's right to use Cash Collateral shall expire on the earlier of (each a "Termination Event"): (a) midnight on November 30, 2014, unless extended or modified by further order of the Court; (b) the appointment of a Chapter 11 trustee; (c) conversion of these Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code; (d) the lifting of the automatic stay to allow Noteholder to foreclose on any of Noteholder's Collateral after the running of any applicable cure periods; (e) when the Debtor fails to fully and completely cure an Event of Default within **three (3) business days** after receipt of written notice to Debtor's counsel via email from Noteholder or its counsel of the Event of Default.

22.     Any termination of Debtor's authority to use the Revenues hereunder shall be without prejudice to Debtor's right to file an additional motion for authority to use of cash collateral.

23.     The automatic stay under Section 362(a) of the Bankruptcy Code shall be and hereby is modified only to the extent necessary to permit Noteholder to collect and apply payments and proceeds with respect to the Collateral, post-Petition Collateral, and Cash Collateral in accordance with the terms and provisions of this Interim Order.

## Other

24.     Except as otherwise provided herein, the terms and conditions of the Loan Documents shall not be impaired by this Interim Order, and Noteholder shall have all of its rights and remedies thereunder, subject to the provisions of the Bankruptcy Code, applicable state law and the authority of the Court.  Subject to the foregoing, the Debtor shall perform all of its obligations under the Loan Documents, including, without limitation, insuring the Real Property and paying taxes with respect to the Real Property in accordance with the Loan Documents.

25.     The appearance of PIP in these Bankruptcy Cases and the actions taken in connection with the Motion, including participation in the hearings, and the consent to the entry of this Interim Order, in no way waive PIP's right to challenge the authority of the LLC Debtor to:

        (a)      manage the affairs of the Debtor; or,

        (b)      continue to prosecute these Bankruptcy Cases.

26.     Noteholder shall not be obligated to, but may, in its sole and absolute discretion, and only upon written consent of Noteholder, advance Cash Collateral to the Debtor, after an uncured default or otherwise, and all such advances of Cash Collateral: (a) shall not constitute a waiver, limitation, or modification of any of Noteholder's rights and remedies pursuant to the

applicable Loan Documents, this Interim Order, and applicable law; and, (b) shall be and hereby are granted all of the protections granted to the Loan Documents under this Interim Order.

27.     Nothing contained in this Interim Order shall be deemed to be a consent by Noteholder to any charge, lien, assessment or claim against under 11 U.S.C. § 506(c) of the Bankruptcy Code or otherwise, and shall be without prejudice to any and all of Noteholder's rights under the Loan Documents, the Bankruptcy Code, and other applicable law.

28.     Except for the liens, mortgages and security interests asserted by Noteholder, and except as may be agreed to in writing by Noteholder, Debtor shall not cause, permit or consent to any liens, mortgages, or security interests to encumber any or all of the Real Property or Collateral except upon further order from this Court.

29.     The Debtor shall maintain all of the Collateral, any collateral provided to Noteholder by this Order, and the Debtor's other Property in good condition and repair, not commit any waste thereof and make all necessary replacements thereof, and operate the same properly and efficiently.

30.     Noteholder consents to the Debtor's use of Cash Collateral to pay the U.S. Trustee's quarterly fees as they become due.

31.     Nothing in this Order shall be deemed to be consent by Noteholder of the Debtor's use of Collateral or Cash Collateral prior to the Interim Period.

32.     To the extent that any Revenues or funds held in the DIP Account are used by Debtor for any purpose not permitted by this Interim Order, or any other Order entered by this Court, Noteholder shall have an allowed claim therefore, which claim shall have priority over all other administrative expenses in this Case, with the exception of the United States Trustee fees and approved Debtor's counsel's fees and expenses.

33.     Nothing herein contained shall prejudice the right of Noteholder at any time to seek: (a) the appointment of a trustee in these Bankruptcy Cases; (b) relief from the automatic stay; (c) dismissal or conversion of these Bankruptcy Cases; or, (d) any other relief.  This Interim Order is without prejudice to the rights of Debtor and/or Noteholder to seek, after notice and hearing, any modification of this Interim Order or other adjudication regarding the Debtor's current or future use of Cash Collateral.

34.     This Order shall be effective as of **November 19, 2014**, upon signature by the Court, and may be relied upon by Noteholder and the Debtor without the necessity of entry into the docket sheet of these Bankruptcy Cases.  The parties may also stipulate and agree to extend the terms of the Interim Order, pursuant to either the attached Budget or another budget agreed to by the parties, by filing notice with this Court and without seeking a further order from this Court.

35.     No act committed or action taken by Noteholder under this Order shall be used, construed, or deemed to hold Noteholder to be in control of the Debtor, or the governance, management, or operations of the Debtor for any purpose without limitation.   Nor will Noteholder be held as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtor's business (as such terms, or any similar terms, or any similar terms, are used in the Internal Revenue Code, Compensation and Liability Act, Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Noteholder under this Interim Order including, *inter alia*, such rights and remedies as may be exercisable by Noteholder in connection with this Interim Order.

36.     Subject to all reservation of rights in this Interim Order, the terms, stipulations, and provisions of this Order shall be binding upon, and shall inure to the benefit of, the Debtor and Noteholder, their respective successors and assigns, including, without limitation, any trustee, agent, administrator, or other fiduciary hereafter appointed as legal representative of the Debtor, or with respect to property of the Debtor's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 cases, and all creditors and parties-in-interest, expect as expressly set forth herein.

37.     Unless and until Noteholder's Indebtedness[4] has been indefeasibly satisfied in full, the protections afforded to Noteholder under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order dismissing these Chapter 11 Bankruptcy Cases or converting these Bankruptcy Cases into Cases pursuant to Chapter 7 of the Bankruptcy Code, and the Replacement Liens and the superpriority administrative claims (pursuant to §§ 364(c)(1), 503(b), and/or 507(b) of the Bankruptcy Code, or otherwise), to the extent applicable, if any, shall continue in these proceedings and in any such successor case, and the Replacement Liens and superpriority administrative claims shall maintain their priority as provided by this Interim Order until Noteholder's Indebtedness has been indefeasibly satisfied in full.

38.     Pursuant to Bankruptcy Rule 4001(b)(2), a Final Hearing on the Motion is set for December 8, 2014, at 10:00 a.m.                    in Courtroom 401, on the 4th Floor of the United States Courthouse, located at 515 Rusk St., Houston, Texas.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon: (a) counsel for the Debtors; (b) counsel for Noteholder; and (c) the Office of the U.S. Trustee for the Southern District of Texas, and shall be filed with the Clerk of the

---

[4] Noteholder's Indebtedness collectively refers to Noteholder's claims against the Debtors in these Bankruptcy Cases, in addition to all other amounts that are due, owing, and that continue to accrue pursuant to the Loan Documents, and as allowed under the Bankruptcy Code, this Interim Order, and applicable law.

United States Bankruptcy Court for the Southern District of Texas no later than two (2) business days before the Final Hearing.

39.     This Interim Order and the Debtor's use of Cash Collateral pursuant to this Interim Order shall not be deemed an admission or a determination of the value of the Property upon which Noteholder asserts liens or security interests, or as to the amount or allowance of Noteholder's status as a secured, unsecured, or under-secured creditor, all such issues being reserved pending further orders of this court.  Further, the consent of Noteholder to this Interim Order does not constitute a waiver of any pre-petition default(s) under the Loan Documents.

## Notice

40.     The Debtor shall promptly mail copies of this Interim Order on all of the following parties: (a) to the United States Trustee for the Southern District of Texas, Houston Division; (b) counsel for Noteholder; (c) the parties listed on each of the Debtors' List of 20 largest unsecured creditors; (d) any other party which has filed a request for notices with the Court; and, (e) any official committee of creditors after the same is appointed, or committee counsel if counsel has been retained and appointed.

DATED:  November 26, 2014

UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND ENTRY REQUESTED:**

**Okin & Adams, LLP**
1113 Vine Street, Suite 201
Houston, Texas 77002
(713) 228-4100 (Telephone)
(888) 865-2118 (Facsimile)


By:   */s/ Christopher Adams*
      Christopher Adams
      Texas Bar No. 24009857

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

    **AND**

**Harold N. "Hap" May
Attorney at Law**
Two Riverway, 15th Floor
Houston, Texas 77056
(281) 407-5609 (Telephone)
(832) 201-7675 (Facsimile)


By:   */s/ Harold N. May, III*
      Harold N. May
      Texas Bar No. 13264800

**ATTORNEYS FOR PREFERRED
INCOME PARTNERS IV, LLC**

    **AND**

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)


By:   */s/ Sean B. Davis*
      Joseph G. Epstein
      Texas Bar No. 06639320
      S.D. Tex. No. 11733
      Sean B. Davis
      State Bar No. 24069583
      S.D. Tex. No. 1048341

**ATTORNEYS FOR JPMCC 2006-LDP7
OFFICE 2401, LLC**

2401 Fountain View
Operating Budget
Nov 2014 thru Dec 2014

| Sq. Ft. | 175,292 | Nov | Dec | TOTALS | |
|---|---|---|---|---|---|
| | **REVENUE** | | | | |
| 4010 | Rent | 286,728 | 294,601 | 581,329 | |
| 4040 | Concessions | -25,330 | -25,330 | -50,660 | |
| 4070 | Parking Fes | 1,590 | 1,590 | 3,180 | |
| 4110 | Keys/Locks/Lock Changes | 425 | 425 | 850 | |
| 4140 | Utility Reimbursements | 0 | 0 | 0 | |
| 4150-20 | Escalation Income C/Y | 2,435 | 2,435 | 4,870 | |
| 4210 | Late Charges | 1,000 | 1,000 | 2,000 | |
| | **TOTAL INCOME** | 266,848 | 274,721 | 541,569 | 541,569 |

| | **OPERATING EXPENSE** | | | | |
|---|---|---|---|---|---|
| | **REPAIR & MAINTENANCE** | | | | |
| 5103 | R&M General Building | 500 | 500 | 1,000 | |
| 5105 | R&M HVAC Supplies | 450 | 1,000 | 1,450 | |
| 5106 | R&M HVAC Contract | 0 | 0 | 0 | |
| 5108 | R&M Roof Repairs | 0 | 0 | 0 | |
| 5110 | R&M Elevator Maintenance | 2,220 | 2,220 | 4,440 | |
| 5118 | R&M Pest Control | 0 | 0 | 0 | |
| 5119 | R&M Landscaping Expense | 750 | 750 | 1,500 | |
| 5120 | R&M Common Area Expense | 200 | 0 | 200 | |
| 5121 | R&M Maintenance Supplies | 250 | 250 | 500 | |
| 5130 | R&M Parking Lot Lighting | 0 | 0 | 0 | |
| 5131 | R&M Parking Lot Sweeping | 0 | 0 | 0 | |
| 5140 | R&M Electrical Expense | 200 | 200 | 400 | |
| 5145 | R&M Plumbing & Supplies | 150 | 2,425 | 2,575 | R&R Backflow Preventer in Nov - Payment Due in Dec |
| 5150 | R&M Painting & Decorating | 0 | 0 | 0 | |
| 5155 | R&M Carpet & Floor Cleaning | 0 | 0 | 0 | |
| 5168 | R&M Lighting Maintenance | 500 | 500 | 1,000 | |
| 5169 | R&M Keys, Locks & Signage | 0 | 0 | 0 | |
| | **TOTAL REPAIR & MAINTENANCE** | 5,220 | 7,845 | 13,065 | 13,065 |

| | **CLEANING & JANITORIAL** | | | | |
|---|---|---|---|---|---|
| 5174 | C&J Window Cleaning | 0 | 0 | 0 | |
| 5176 | C&J Contract Cleaning | 6,500 | 6,500 | 13,000 | |
| | **TOTAL CLEANING & JANITORIAL** | 6,500 | 6,500 | 13,000 | 13,000 |

2401 Fountain View
Operating Budget
Nov 2014 thru Dec 2014

| Sq. Ft. | 175,292 | Nov | Dec | TOTALS | |
|---|---|---|---|---|---|
| | **UTILITIES** | | | | |
| 5310 | Electricity | 32,000 | 30,000 | 62,000 | |
| 5330 | Sewer & Water | 3,500 | 3,500 | 7,000 | |
| 5380 | Trash Disposal | 825 | 825 | 1,650 | |
| | **TOTAL UTILITIES** | 36,325 | 34,325 | 70,650 | 70,650 |
| | **PAYROLL** | | | | |
| 5405 | G&A Payroll - ASR | 4,835 | 4,835 | 9,670 | |
| 5410 | R&M Payroll - ASR | 6,503 | 6,503 | 13,006 | |
| 5420 | R&M Payroll - Other | 0 | 0 | 0 | |
| | **TOTAL PAYROLL** | 11,338 | 11,338 | 22,676 | 22,676 |
| | **FIRE & SECURITY** | | | | |
| 5555 | Security - Contract Service | 250 | 250 | 500 | |
| 5556 | Other Security Expense | 150 | 150 | 300 | |
| 5560 | Fire Protection | 700 | 700 | 1,400 | |
| | **TOTAL FIRE & SECURITY** | 1,100 | 1,100 | 2,200 | 2,200 |
| | **GENERAL & ADMIN** | | | | |
| 5602 | Advertising / Marketing | 0 | 0 | 0 | |
| 5605 | G&A Office General | 0 | 0 | 0 | |
| 5655 | Office Supplies/Equipment | 12,050 | 50 | 12,100 | Repair IT Room Damage from HVAC Failure in Nov |
| 5675 | Telephone / DSL | 700 | 700 | 1,400 | |
| | **TOTAL OFFICE & ADMIN** | 12,750 | 750 | 13,500 | 13,500 |
| | **TAXES & INSURANCE** | | | | |
| 5705 | Taxes-Real Estate | 0 | 0 | 0 | |
| 5706 | Taxes-Personal Property | 0 | 0 | 0 | |
| 5707 | Tax Consulting Fees | 0 | 0 | 0 | |
| 5720 | Insurance | 0 | 0 | 0 | |
| | **TOTAL TAX & INSURANCE** | 0 | 0 | 0 | 0 |
| | **MANAGEMENT FEES** | | | | |
| 5905 | Management Fees - ASR | 7,344 | 7,344 | 14,688 | |
| | **TOTAL MANAGEMENT FEES** | 7,344 | 7,344 | 14,688 | 14,688 |
| | **TOTAL OPERATING EXP** | 80,577 | 69,202 | 149,779 | 149,779 |

2401 Fountain View
Operating Budget
Nov 2014 thru Dec 2014

| Sq. Ft. | 175,292 | Nov | Dec | TOTALS | |
|---|---|---|---|---|---|
| | **NON-REIMB OPERATING EXPENSE** | | | | |
| | **MARKETING (NON-REIMB)** | | | | |
| 6505-40 | Postage, Courier & Freight | 25 | 25 | 50 | |
| 6520 | Tenant Relations & Hospitality | 0 | 0 | 0 | |
| 6527 | Space Planning Fees | 1,000 | 0 | 1,000 | |
| | **TOTAL MARKETING (NON-REIMB)** | 1,025 | 25 | 1,050 | 1,050 |
| | | | | | |
| | **OFFICE & ADMIN (NON-REIMB)** | | | | |
| 6680-30 | Travel - Mileage | 35 | 35 | 70 | |
| | **TOTAL OFFICE & ADMIN (NON-REIM** | 35 | 35 | 70 | 70 |
| | | | | | |
| | **TOTAL NON-REIMB EXPENSES** | 1,060 | 60 | 1,120 | 1,120 |
| | | | | | |
| | **OTHER CASH FLOW ITEMS** | | | | |
| 1255 | Lender Impounds - Insurance | 9,105 | 9,105 | 18,210 | |
| 1260 | Lender Reserves - Replacement / Repairs | 16,442 | 16,442 | 32,884 | |
| 1261 | Lender Reserves - TI / Commissions | 0 | 0 | 0 | |
| 1270 | Lender Impound-Taxes | 36,892 | 36,892 | 73,784 | |
| 1502 | Tenant Improvements | 0 | 101,046 | 101,046 | |
| 2520 | Adequate Protection - Mortgage Payable | 16,780 | 16,780 | 33,560 | |
| 7810 | Adequate Protection - Mortgage Interest | 58,193 | 58,193 | 116,386 | |
| 8115 | Bank Fee/Charges | 351 | 350 | 701 | |
| 8125 | Business License / Fees | 0 | 0 | 0 | |
| 8165 | Accounting Services | 0 | 0 | 0 | |
| 8175 | Other Professional Services | 0 | 0 | 0 | |
| 8405 | Interest Income | 0 | 0 | 0 | |
| 8510 | Leasing Commissions | 0 | 64,399 | 64,399 | |
| | **TOTAL OTHER CASH FLOW ITEMS** | 137,763 | 303,207 | 440,970 | 440,970 |
| | | | | | |
| | **TOTAL EXPENSES** | 219,400 | 372,469 | 591,869 | 591,869 |
| | | | | | |
| | **CASH FLOW BEFORE BANKRUPTCY COSTS** | 47,448 | -97,748 | -50,300 | -50,300 |

2401 Fountain View
Operating Budget
Nov 2014 thru Dec 2014

| Sq. Ft. | 175,292 | Nov | Dec | TOTALS | |
|---|---|---|---|---|---|
| | **BANKRUPTCY COSTS** | | | | |
| | Debtors' Attorneys Fees | 20,000 | 20,000 | 40,000 | |
| | Administrative Costs (Consultant) | 15,000 | 15,000 | 30,000 | |
| | U.S. Trustee's Fees | 0 | 0 | 0 | |
| | Appraisal Fees | 0 | 0 | 0 | |
| | **TOTAL BANKRUPTCY COSTS** | 35,000 | 35,000 | 70,000 | 70,000 |
| | | | | | |
| | **CASH FLOW AFTER BANKRUPTCY COSTS** | 12,448 | -132,748 | -120,300 | -120,300 |

85,418 < October Ending Cash Balance 2401 DIP Acct
84,019 < October Ending Cash Balance Lender
169,437 < Total October Ending Cash Balance  Fountainview
   Month Ending Balance w/o Bankruptcy Costs  216,885  119,137
   Month Ending Balance After Bankruptcy Costs  181,885  84,137