THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ASR 2401 FOUNTAINVIEW, LP, | § | Case No. 14-35322-H3-11 |
| | § | (Chapter 11) |
| DEBTOR. | § | (Jointly Administered) |
| | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| ASR 2401 FOUNTAINVIEW, LLC, | § | Case No. 14-35323-H3-11 |
| | § | (Chapter 11) |
| DEBTOR. | § | (Jointly Administered) |
| | § | |
| | § | |

**OKIN & ADAMS LLP'S RESPONSE TO NOTEHOLDER'S OBJECTION TO FIRST
AND FINAL FEE APPLICATION OF OKIN & ADAMS LLP, COUNSEL FOR THE
DEBTORS, FOR THE PERIOD SEPTEMBER 30, 2014 THROUGH JUNE 12, 2015**
**[RELATES TO DOCKET # 303]**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

Okin & Adams LLP ("Okin Adams") hereby submits its Response ("Response") to
Noteholder's Objection (the "Fee Objection") to First and Final Fee Application of Okin &
Adams LLP (the "Fee Application"), Counsel to the Debtors, for the Period September 30, 2014
Through June 12, 2015.

**I.**
**BACKGROUND**

1.     On September 30, 2014, ASR 2401 Fountainview, LP (the "LP Debtor") and AS
2401 Fountainview, LLC (the "LLC Debtor"), the debtors and debtors-in-possession
(collectively the "Debtors") filed voluntary petitions under Chapter 11 of the bankruptcy Code
initiating these bankruptcy proceedings.

2.      On October 30, 2014, the Debtors filed their Application (the "Employment Application") [Docket # 13] to retain Okin & Adams LLP as general bankruptcy counsel to the Debtors and on November 25, 2014, the Court entered an order granting the Employment Application [Docket # 33].

3.      On May 29, 2015, the Court entered an order (the "Confirmation Order") [Docket # 202] confirming the Debtors Third Amended Plan of Reorganization (the "Plan").   The Noteholder (defined below) alleges that the Plan became effective on Monday, June, 15, 2015. Section 15.3 of the Plan provides that professional fee applications should be filed within 30 days of the Effective Date (as defined in the Plan).

4.      On August 4, 2015, Okin Adams filed its First and Final Fee Application seeking fees in the amount of $205,490.00 and expenses in the amount of $2,250.12.

**The Noteholder's Claim and the D&P Objection Thereto:**

5.      On November 18, 2014, the Debtors' secured lender, JPMCC 2006-LDP7 Office 2401, LLC (the "Noteholder") filed its proofs of claim in the amount of not less than $10,917,261.72 in the Debtors cases (the "Noteholder Claim").   On March 20, 2015, Dansk ASR Investments, LLC ("Dansk") and Petrochem Development I, LLC ("Petrochem", and together with Dansk, "D&P") filed their objection (the "D&P Objection") to the Noteholder's Claim.

6.      On August 25, 2015, the Court entered the "Agreed Order" [Docket # 296] resolving the D&P Objection and the Noteholder Claim.   On that same day, Jetall Companies, Inc. ("Jetall") filed a notice of appeal of the Agreed Order[1].   Jetall, however, has not asked for a stay of the Agreed Order.   Shortly after entry of the Agreed Order, Ronald Sommers, the Distribution Agent for the Debtors, remitted to the Noteholder the entire amount of its claim, as

---

[1] Jetall was not a party to the objection to the Noteholder's Claim and the Debtors are skeptical as to whether Jetall has standing to appeal the entry of the Agreed Order.

allowed under the Agreed Order.  In short, the Noteholder's Claim has been satisfied, in full.

## II.
## RESPONSE

### A.  Noteholder Lacks Standing to Object to the Fee Application.

1.      Noteholder lacks standing to assert its objection to the Fee Application.  Since Noteholder's claim has been satisfied in full, Noteholder has no pecuniary interest in the outcome of the Fee Application and, therefore, no standing.  *See, eg., In re Mushroom Transp. Co*., 486 B. R. 148 (Bankr. E. D. Penn. 2013) (creditor who was paid during the bankruptcy case no longer had a personal stake in the controversy and thus was divested of standing to object to professional fees).  No other party has objected to the timeliness of the Okin Adams Fee Application.

2.      Since Noteholder does not have standing to assert its Fee Objection, the Court should strike the Fee Objection.  Moreover, since no party with a pecuniary interest in the outcome of the Fee Application has objected based upon the timeliness of the Fee Application[2], the Court should consider the Fee Application on its merits.

### B.  Excusable Neglect.

3.      Okin Adams's failure to file the Fee Application prior to August 4, 2015 was a result of excusable neglect.  Okin Adams had incorrectly calendared the Fee Application due date for 60 days after the Effective Date, rather than 30 days after the Effective Date as provided in Section 15.3 of the Plan.  This mistake was an innocent error, however, and allowance of the Okin Adams fees would not negatively affect any party to the case.

4.      Noteholder asserts that, based on a technicality, Debtors' counsel should forfeit

---

[2] Dansk ASR Investments, LLC has filed a limited objection to the Fee Application, but has not complained about the timeliness of the Fee Application.  Okin Adams is filing a separate response to the specific objections Dansk raises in its objection.

all of its fees in the bankruptcy case.  Such a result is simply not just (nor would it benefit the Noteholder or any other creditor, as is explained herein).  Okin Adams has been counsel to the Debtors since the inception of these bankruptcy cases – almost one full year.  Okin Adams has spent a considerable amount of time on these cases during that time period.  Noteholder does not contend that Okin Adams's representation of the Debtors was not beneficial to the estate.  Nor does Noteholder contend that Okin Adams failed to provide actual and reasonable services to the Debtors that resulted in a tangible, identifiable and material benefit to the Debtors[3].  Such an assertion would be unfounded.

5.      The result of the efforts of Okin Adams is that <u>all allowed claims were, or will be, paid in full</u>.  This was not simply because this was an easy case with a huge equity cushion for secured creditors.  In fact, only after the first and second lien holders agreed to reduce their claims were the unsecured creditors guaranteed a 100% distribution.  Furthermore, the cases were quite difficult and riddled with contentiousness and controversy.  For example, in December of 2014 the parties participated in a 22 hour mediation.  The parties began the mediation at 9:00 a.m. and eventually left the offices of Okin Adams at 7:00 a.m. the next day with a signed settlement agreement.  However, even after the mediation resulted in settlement, the parties had numerous disputes and only after an additional 6 months of heated litigation, with multiple plans of reorganization drafted and proposed, did the case finally result in a confirmed Plan.

6.      Even after the Plan was confirmed, the parties nervously awaited the closing of the sale of the property that would allow the Plan to succeed and consummate.  Additional

---

[3] Reference to the language used in *In re ProSnax Distributors, Inc.*, 157 F. 3d (5th Cir. 1998) is not intended to suggest that this Court is bound by the holding in *Prosnax* that has recently been overturned by the Fifth Circuit. The reference is to highlight that even if the Court applied a heightened standard, Okin Adams' services to the Debtors provided an irrefutable benefit to the estate and resulted in full satisfaction of all allowed claims.

litigation ensued relating to the claim of the Noteholder.  That litigation was resolved only a couple of weeks prior to the filing of this Response.  To say that these cases were not run-of-the-mill is a huge understatement.  In the end, however, all allowed claims were, or will be, paid in full and the Distribution Agent is holding enough money to cover the fees of Okin Adams.

7.      The Supreme Court has provided a guide for bankruptcy courts when considering the allowance of untimely claims based upon the excusable neglect standard.  In the case of *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership* 507 U.S. 380, 113 S. Ct 1489 (1993), the Supreme Court held that courts should explore the following when considering whether such failure amounted to excusable neglect:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. at 395.

8.      In the present case, Okin Adams meets the standards for excusable neglect.  First, there is absolutely no prejudice to the Debtors, as the Debtors have sold their assets and liquidated.  In *In re Eagle Bus Mfg., Inc., et al*., 62 F. 3d 730, 733 (5th Cir. 1995) the Fifth Circuit held that "[u]nder Pioneer, the central inquiry is whether the *debtor* will be prejudiced." (Emphasis in original).

9.      Moreover, not a single creditor would be prejudiced by the allowance of the Okin Adams Fee Application.  As was mentioned above, all allowed claims have been paid in full and the Distribution Agent is holding enough money to cover the fees of Okin Adams.  Additionally, the Debtors and the creditors who were active in the proceedings were aware of the fees that Okin Adams was owed in the case.  Okin Adams informed all of the parties that it expected its fees to amount to approximately $200,000 (the Fee Application seeks fees in the amount of

$205,490.00 and expenses in the amount of $2,250.12).   In fact, the Amended Disclosure Statement provides that the estimated fees that the Debtors' professionals were owed amounted to approximately $300,000.00 (Amended Disclosure Statement at p. 10).   The only two professionals of the Debtors were Okin Adams and Stout Risius Ross, Inc. ("SRR").   On August 28, 2015, the Court entered an order allowing SRR's fee application in the amount of $102,383.00 and upon information and belief, SRR has already been paid.   Therefore, the Third Amended Plan was formulated, filed, solicited, and prosecuted with the full disclosure of the professional fees that Okin Adams is asserting in the Fee Application.   There is simply no surprise or harm to the Debtors or any other party to the case by allowance of the fees.

10.     The reason for the delay was an honest mistake made by Okin Adams.   Okin Adams admits that the error was well within the control of Okin Adams, but the delay was not a long delay (20 days after the Noteholder alleges the Fee Application was due) and was a good faith and honest mistake.   In fact, the sale of the Debtors' assets was approved under the Third Amended Plan, but the closing of the sale did not happen until July 30, 2015 (15 days after the alleged Effective Date).   The Fee Application was filed 5 days later.

11.     It is noteworthy that there were some very serious concerns by many of the parties that the closing would not occur at all.   Moreover, it was not until the closing occurred that there was any money available to pay any of the claimants.   Therefore, while the Third Amended Plan provided that Professional Fee Claims were to be filed within 30 days of the Effective Date, the closing of the sale did not happen until 15 days after the alleged Effective Date and the Fee Application was filed a short 5 days later.   In retrospect, closing of the sale should have been included as a condition precedent to the occurrence of the Effective Date (it was included in earlier versions filed with the Court).   Regardless, Okin Adams asserts that there is absolutely no

impact on the judicial proceedings by allowing the fees of Okin Adams.

12.     To summarize, (i) the Noteholder lacks standing to object to the fees of Okin Adams; (ii) the application was at most 20 days late and was filed only 5 days after the sale of the property closed: (iii) allowance of Okin Adams' fees would prejudice no party; (iv) the Distribution Agent is holding enough money to cover the fees of Okin Adams and every allowed claim has been paid, or will be paid, in full, and (v) Okin Adams' error in not filing the fee application sooner was an honest and good faith mistake that will, if allowed, result in no harm to any creditor or the Debtors.

13.     Based on the foregoing, Noteholder's Fee Objection should be stricken for lack of standing and the Fee Application considered based on lack of any objection by any party with standing, and the Fee Application should be considered by the Court and allowed based upon the excusable neglect standard.

WHEREFORE, the Debtors request that this Court (i) strike the Fee Objection, (ii) consider the Fee Application on its merits, and (iii) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 10th day of September, 2015.


Respectfully submitted,
OKIN & ADAMS LLP

By: */s/Christopher Adams* .
Christopher Adams
Texas bar No. 24009857
Email: cadams@okinadams.com
113 Vine Street, Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118
**COUNSEL FOR DEBTORS AND**

**DEBTORS-IN-POSSESSION
ASR2401 FOUNTAINVIEW, LP AND
ASR 2401 FOUNTAINVIEW, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing Response was served upon the parties who receive ECF notice on the 10th day of September, 2015.

 */s/Christopher Adams*
Christopher Adams