

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
11/30/2015

|  |  |  |
|---|---|---|
| IN RE | ) ) ) |  |
| ASR 2401 FOUNTAINVIEW, LLC and ASR 2401 FOUNTAINVIEW, LP, | ) ) ) | CASE NO. 14-35323-H3-11 |
| Debtors, | ) ) ) | (Jointly Administered) |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "First and Final Fee Application of Okin & Adams LLP, Counsel for the Debtors, for the Period September 30, 2014 Through June 12, 2015" (Docket No. 273). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

ASR 2401 Fountainview, LLC and ASR 2401 Fountainview, LP ("Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on September 30, 2014. The cases were jointly administered by order entered on October 2, 2014.

Debtors sought (Docket No. 13) and obtained (Docket No. 33) authority to employ Okin & Adams LLP ("Applicant") as Debtors' counsel.

Debtors, which owned and operated an office building located at 2401 Fountainview, Houston, Texas, proposed a plan calling generally for sale of the building by a distribution agent ("Sommers"), payment in full of the claim of JPMCC 2006-LDP7 Office 2401, LLC ("JP Morgan"), and reduced, deferred payments to other creditors, including Dansk ASR Investments, LLC ("Dansk").[1]

After a contested evidentiary hearing, the court confirmed the plan, by Memorandum Opinion and Judgment entered on May 29, 2015. (Docket Nos. 201, 202). On the motion of ioMosaic Corporation, the Judgment was amended, by order entered on June 15, 2015, to include a paragraph that had been omitted from the proposed form of judgment submitted to the court. (Docket No. 228).

The plan provides in pertinent part:

15.3 <u>Payment of Professional Fees</u>.

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order. Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within thirty (30) days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the

---

[1] On August 7, 2015, Sommers filed a statement indicating that the sale occurred on or about July 30, 2015. He stated that he had reserved payments for eight entities, including Applicant, in an amount totaling $11,564,888.64. (Docket No. 279).

>Bankruptcy Rules, and the applicable local rules.  The failure to file an application by the foregoing deadline shall constitute a waiver of all such Professional Fee Claim.

(Docket No. 172).

In the instant application, Applicant seeks allowance of $205,490.00 in compensation for services rendered, and $2,250.12 in reimbursement of expenses, for 657.5 hours of services rendered in the instant case between September 30, 2014 and June 12, 2015.

Dansk objected to the instant application, asserting that the time spent on claims administration (33.5 hours) and on the plan and disclosure statement (263.9 hours) were excessive. (Docket No. 302).

JP Morgan objected to the instant application, asserting that the instant application was not timely filed, and thus the amounts claimed have been waived pursuant to the plan. (Docket No. 303).

Applicant responded to JP Morgan's objection, asserting that JP Morgan lacks standing to object because its claim has been paid in full, and also asserting that Applicant's failure to file the instant application within 30 days after the effective date was the result of excusable neglect.

At the hearing on the instant application, Christopher Adams testified that his firm mistakenly calendared the date by which fee applications must be filed for 60 days after the effective date of the plan, rather than 30 days.  He testified

that the instant application was filed five days after the closing of the sale contemplated by the plan.

Adams testified that he believes there will be sufficient funds from the sale of the property to pay all claims the full distribution to which they are entitled under the plan. He testified that, to the extent resolution of the pending claim objections results in insufficient funds to pay all claims in full, Applicant is prepared to discount its fees to ensure that the other claims are paid the full distribution to which they are entitled under the plan.

Sommers' calculation of reserves remaining on September 25, 2015, for payment of claims, is in evidence. Sommers stated that the reserves total $177,744.64, but this is without including the $207,740.12 sought by Applicant under the instant application, or Sommers' fee,. He stated that he had accrued billings of $24,039 for his own fee, and expended $1,974 for the payment of a bond. He stated that he was holding $366,042.94. (Debtor's Exhibit 7).[2]

---

[2] The court notes that the amount Sommers has stated he was holding is insufficient to pay Sommers' accrued billing and make a full distribution on the reserve amount, if all the claims are allowed in the amounts of Sommers' reserve. Adams testified that he believes that, after all claim objections have been completed, there will be sufficient funds to pay all claims in full.

Conclusions of Law

Under Bankruptcy Rule 9006(b)(1), the time to do an act may be enlarged on motion made after the expiration of the specified period where the failure to act was the result of excusable neglect.  Rule 9006(b)(1), Fed. R. Bankr. P.

In determining whether a party's conduct resulted from excusable neglect, the court must take into account all relevant circumstances surrounding the failure, including the danger of prejudice to the adverse parties, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the party acted in good faith.  <u>Christopher v. Diamond Benefits Life Ins. Co. (In re Christopher)</u>, 35 F.3d 232 (5th Cir. 1994).

The instant application was filed no more than 20 days after the date set forth in the plan.  There is no prejudice to adverse parties from the late filing of the instant application, in light of Applicant's agreement to discount its fees to ensure that all claims are paid the full distribution to which they are entitled under the plan.  There are no pending proceedings affected by the short delay.  Applicant acted in good faith.  The court concludes that the instant application should be granted, subject to the limitation that all other claims receive the full

distribution to which they are entitled under the plan.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on November 30, 2015.

*(signature)*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE